UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLA REDDEN,

        Plaintiff,                                    Hon. Robert J. Jonker

v.                                                        Case No. 1:13-CV-1056

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

        The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security

case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 23 years of age on her alleged disability onset date. (Tr. 169). She successfully completed high school and worked previously as an exotic dancer/entertainer. (Tr. 22, 47, 65). Plaintiff applied for benefits on May 23, 2012, alleging that she had been disabled since January 1, 2009, due to bipolar disorder, major depression, anxiety, and PTSD. (Tr. 169-81, 239). Plaintiff's applications were denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 70-166). On June 5, 2013, Plaintiff appeared before ALJ Luke Brennan with testimony being offered by Plaintiff and a vocational expert. (Tr. 30-68). In a written decision dated June 13, 2013, the ALJ determined that Plaintiff was not disabled. (Tr. 12-24). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-4). Plaintiff subsequently initiated this pro se action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1]  If the Commissioner can make a

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from: (1) generalized anxiety disorder; (2) depressive disorder; (3) bipolar disorder; and (4) personality disorder, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 15-17). With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work subject to the following limitations: (1) she is limited to simple routine tasks performed in small groups or by herself; (2) she

---

be performed (20 C.F.R. 404.1520(f)).

can have no more than occasional interaction with supervisors, co-workers, or the general public; and (3) she is limited to work requiring only simple work-related decision making and few workplace changes. (Tr. 17).

The ALJ determined that Plaintiff could not perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed in the state of Michigan approximately 84,000 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 64-67). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). Accordingly, the ALJ denied Plaintiff's claim for benefits.

I.        The ALJ Properly Discounted Plaintiff's Subjective Allegations

At the administrative hearing, Plaintiff testified that she was impaired to an extent far greater than recognized by the ALJ. Plaintiff testified that she was unable to drive because she experiences panic attacks and was unable to use public transportation because she does not like to be in public. (Tr. 37-38). Plaintiff further reported that she has "a fear of being around people in social gatherings." (Tr. 51). Plaintiff testified that she stopped attending college because she was "stressed out." (Tr. 38). Plaintiff reported that "a couple times a week" she experiences "thoughts of death." (Tr. 44). Plaintiff reported that she experiences difficulty "getting out of bed in the morning" and only leaves her apartment when she "absolutely [has] to." (Tr. 48-49). Plaintiff testified that she experiences panic attacks which are triggered by "anything." (Tr. 51-52). Plaintiff reported that she is unable concentrate and "stay on task" for prolonged periods of time. (Tr. 53-54). Plaintiff testified that she experiences feelings of sadness and emptiness "all the time" and cries "all the time." (Tr. 56). The ALJ found Plaintiff to be less than credible and, therefore, discounted her subjective allegations. Plaintiff asserts that she is entitled to relief because the ALJ's rationale for discounting her testimony is not supported by substantial evidence.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed.

6

Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must

stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

Social Security regulations provide that when evaluating a claimant's credibility, the ALJ must consider the medical evidence as well as other relevant information including the following:

> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ examined in great detail the evidence in this matter and concluded that such undermined Plaintiff's credibility. Treatment notes dated January 16, 2009, indicate that Plaintiff was presently working as a stripper. (Tr. 281). On January 26, 2009, Plaintiff reported that she

"feels depressed because she does not have cable" and "is tired of watching the same bootlegged movies over and over." (Tr. 295). It was further noted that Plaintiff "has missed several appointments with her therapist." (Tr. 295).

Treatment notes dated September 12, 2011, indicate that Plaintiff was taking her prescribed medication and "doing really good." (Tr. 312). Treatment notes dated November 14, 2011, indicate that Plaintiff's anxiety was "getting worse" after Plaintiff stopped taking her medications. (Tr. 310).

On May 4, 2012, Plaintiff was examined at Community Mental Health. (Tr. 728-37, 748-50). Plaintiff reported that she was experiencing depression and anxiety. (Tr. 748). Plaintiff reported "past use of alcohol, cocaine, nicotine, meth, and marijuana," but "insists she is sober now and has no problems with substance use/abuse at this time." (Tr. 731). Plaintiff reported that she "was prescribed anti-depressants," but long ago stopped taking them. (Tr. 750). Plaintiff also reported that she last participated in therapy approximately one year prior. (Tr. 750). Plaintiff was diagnosed with depressive disorder and her GAF score was rated as 64.[2] (Tr. 749).

Plaintiff was hospitalized from May 10, 2012, through May 15, 2012. (Tr. 352-65, 403-706). On May 10, 2012, Plaintiff reported to the emergency department "complaining of suicidal thoughts." (Tr. 403). Plaintiff reported that she was experiencing "significant interpersonal conflict" concerning "a boyfriend who was a fugitive." (Tr. 640). Plaintiff apparently "offer[ed] assistance" to her boyfriend after which she was "kicked out of her apartment." (Tr. 640). An initial

---

[2] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 2000) (hereinafter DSM-IV). A score of 64 indicates that the individual is experiencing "some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 34.

examination revealed that Plaintiff was disheveled and unkempt. (Tr. 639). Her speech, however, was within normal limits and her mood and effect was characterized as euthymic.[3] (Tr. 639). While Plaintiff was "not endorsing any active suicidal ideation," it was determined that hospitalization was appropriate. (Tr. 639). Plaintiff responded well to treatment and was discharged five days later at which point she was described as "pleasant, polite, well engaged. . .[and] future and goal oriented." (Tr. 641). Plaintiff exhibited "no signs of psychosis, no signs of mania" and "a brighter and happier affect and [her] mood is less depressed." (Tr. 641).

On September 13, 2012, Plaintiff reported that she was unable to work "because on some days she is unable to be around people without being feeling more depressed and feeling that people are judging." (Tr. 724). Plaintiff also reported that she was not taking her medications as prescribed. (Tr. 723). Plaintiff's GAF score was rated as 55.[4] (Tr. 725). Treatment notes dated October 25, 2012, indicate that Plaintiff was "frequently" consuming alcohol and/or "other substance[s]," but was not taking her medications as prescribed. (Tr. 715). On December 4, 2012, Plaintiff reported that she was experiencing depression and anxiety. (Tr. 712). Plaintiff also reported, however, that she was not taking her medications as prescribed. (Tr. 711-12). Treatment notes dated February 15, 2013, indicate that Plaintiff was "occasionally" consuming alcohol and/or "other substance[s]," but was not taking her medications as prescribed. (Tr. 707). On May 10, 2013, Plaintiff reported that she was experiencing "overwhelming anxiety, anger, negative thinking,

---

[3] Euthymic is defined as "a normal mood in which the range of emotions is neither depressed nor highly elevated." *See* Euthymic, available at http://medical-dictionary.thefreedictionary.com/euthymic (last visited on February 23, 2015).

[4] A GAF score of 55 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

helplessness and restlessness." (Tr. 753). Plaintiff also reported that she was not taking her medications as prescribed. (Tr. 752).

The medical evidence more than supports the ALJ's determination that Plaintiff was not credible. To the extent that the additional factors are relevant such likewise support the ALJ's decision. For example, as the ALJ correctly noted, Plaintiff's history of sporadic treatment and noncompliance further undermines her credibility. In sum, the ALJ's credibility determination complies with the relevant legal standard and is supported by substantial evidence.

**II.        The ALJ Properly Assessed the Opinions Offered by Laurie Rudolph**

On August 6, 2012, Laurie Rudolph, a counselor with whom Plaintiff treated, authored a letter "[t]o whom it may concern." (Tr. 763). Rudolph reported that she had been meeting with Plaintiff "on a weekly basis" for less than one month.[5] (Tr. 761, 763). Rudolph reported that Plaintiff "is unable to tolerate being around others because she feels threatened, is fearful and nervous, has racing thoughts, has uncontrolled anger, acts out by verbally or physically attacking others, and her actions and verbal responses are often inappropriate and maladaptive." (Tr. 763). Rudolph recommended that Plaintiff "be considered unemployable and deemed disabled." (Tr. 763).

On February 11, 2013, Rudolph completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and

---

[5] In her August 6, 2012 letter, Rudolph stated that she had treated Plaintiff since May 21, 2012. (Tr. 763). In a subsequent letter, however, Rudolph stated that she had only treated Plaintiff since July 11, 2012. (Tr. 761).

(4) adaptation. (Tr. 757-58). Plaintiff's abilities were characterized as "moderately limited" in seven categories and "markedly limited" in thirteen categories. (Tr. 757-58). On February 25, 2013, Rudolph, in a letter to Plaintiff's counsel, supplemented her opinion regarding Plaintiff's level of functioning. (Tr. 761-62). Rudolph reported that:

> [Plaintiff's] disorders interfere with her daily functioning to the point she is unable to maintain employment. She has an extensive history of failed attempts at unskilled jobs, lacks the ability to interact with co-workers, is unable [to] remember and follow instructions, cannot interact appropriately with the general public or maintain adequate attention to complete simple tasks. At times her disorder is disabling enough that she cannot complete activities of daily living or leave her home.

(Tr. 761-62).

The ALJ afforded only "partial weight" to these opinions. (Tr. 22). Plaintiff asserts that she is entitled to relief because the ALJ improperly discounted Rudolph's opinions.

In support of his decision to discount Rudolph's opinion, the ALJ relied on several rationales. First, the ALJ noted that Rudolph was not an acceptable medical source, a conclusion Plaintiff does not dispute. Because Rudolph is not an acceptable medical source her opinions are entitled to no particular deference. The ALJ nevertheless evaluated Rudolph's opinion pursuant to the relevant criteria. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 378 (6th Cir. 2013). In this respect, the ALJ observed that while Rudolph indicated that Plaintiff could perform simple tasks, "there is no explanation given for the more severe portions" of Rudolph's assessments. This conclusion is more than justified. Rudolph's assessments are little more than conclusions that Plaintiff is allegedly disabled. The conclusion that a claimant is disabled, however, is a matter reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). Rudolph does not

provide support for her conclusions that Plaintiff is so severely impaired. Thus, as the ALJ recognized, Rudolph's conclusions appear to be based "upon subjective reporting by the claimant and not objective information." (Tr. 22). As discussed above, however, the ALJ properly discounted Plaintiff's credibility. Accordingly, the decision to afford only "partial weight" to Rudolph's opinions is supported by substantial evidence.

**II.        The ALJ Properly Assessed the Opinions of Laura Kracker**

On September 25, 2012, Plaintiff participated in a consultive examination conducted by Laura Kracker, M.A., L.L.P. (Tr. 388-93). Plaintiff reported that she was experiencing depression and anxiety. (Tr. 388). Plaintiff also reported, however, that while she was taking medication to treat a physical condition, she was not presently taking any medications to treat her emotional impairments. (Tr. 389). The results of a mental status examination were unremarkable. (Tr. 389-91). Kracker diagnosed Plaintiff with major depressive disorder and anxiety disorder. (Tr. 392). Kracker also noted, however, that if Plaintiff would take the appropriate medication "she may be able to do some simple and routine tasks." (Tr. 392). The ALJ placed "great weight" on Kracker's assessment. (Tr. 21).

Plaintiff argues that she is entitled to relief because the ALJ mischaracterized Kracker's comments and ignored certain portions of her assessment. Specifically, Plaintiff takes the ALJ to task for incorrectly stating that Kracker concluded that Plaintiff "could do simple routine tasks" if she took medication. As Plaintiff correctly notes, Kracker actually stated that if Plaintiff took proper medication she "*may* be able to do some simple and routine tasks." This is, in the Court's estimation, a distinction without a difference. Every assessment of a claimant's functional

capacity is a prediction of sorts, an assessment of what the individual may or should be able to do under certain circumstances. The ALJ's choice of words in this instance, while perhaps inaccurate, is nevertheless harmless. More importantly, the conclusion that Plaintiff would be able to work if she complied with treatment is supported by Kracker's assessment and the record as a whole.

As for Plaintiff's argument that the ALJ failed to accord significance to Kracker's assessment of Plaintiff's GAF score, the Court is equally unpersuaded. Kracker reported Plaintiff's GAF score as 49.[6] (Tr. 392). A GAF score is not medical evidence. *See, e.g., Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 503 n.7, 511 (6th Cir., Feb. 9, 2006) (because a GAF score "is not raw medical data" the ALJ is not required "to put stock in a GAF score in the first place"). Rather, a GAF score is "nothing more than a snapshot of a particular moment." *Sambrooks v. Colvin*, 556 Fed. Appx. 506, 511 (7th Cir. 2014). Given Plaintiff's concession to Kracker that she was not presently taking medication as well as the evidence that Plaintiff's level of functioning improves with medication and treatment, the ALJ properly placed no significance Plaintiff's GAF score. In sum, the ALJ's evaluation of Kracker's assessment is supported by substantial evidence. Accordingly, this argument is rejected.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

---

[6] A GAF score of 49 indicates that the individual is experiencing "serious symptoms or any serious impairment in social, occupational, or school functioning." DSM-IV at 34.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date:  February 24, 2015                                  /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge